United States District Court
Southern District of Texas

**ENTERED**

June 09, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:25-CR-00687 |
| | § | |
| BENLIN YUAN (1) | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND ORDER**

Before the Court is the defendant's, Benlin Yuan, motion to suppress statements made during an interview with federal officials conducted on November 28, 2025 [DE 128]. The government has responded [DE 148] and the matter is before the Court on the arguments and testimony received on May 18-20, 2026. After a careful review of the evidence and arguments, the Court determines that the motion should be granted.

## I.    RELEVANT HISTORICAL FACTS

On November 28, 2025, federal agents from the BIS, specifically, SA's Fox, Luo and Diffley approached the defendant and his family in the parking lot at his residence in Virginia. After introductions, the defendant and his family and the special agents entered the lobby and occupied an open space in the condominium's clubhouse. The Agents identified themselves, at the outset, and informed the defendant that they had questions that they wanted for him. The defendant and his family accommodated the agents, and the agents recorded the entire proceeding starting just before they approached the defendant.

The agents informed the defendant that he did not have to talk to them and that he could stop at any time. As well, they informed the defendant that he was not under arrest. SA Fox then gave a summary statement concerning what they wanted to ask the defendant in English. After an

1 / 6

extended interview, conducted in both English and Mandarin, the agents stepped outside the interview space and conferred.  Shortly, they returned and conferred informing the defendant that he was under arrest.

## II.    THE DEFENDANT'S CONTENTION FOR SUPPRESSION

In two grounds for suppression of the interview, the first of the two presenting five factors, the defendant asserts:

(a)    the BIS interview was custodial and the agents failed to apprise the defendant of his constitutional rights before interrogating him.  In support of this contention, the defendant sets out five (5) factors that he contends bears upon the admissibility of his remarks during the interview.  They are as follows:

   (1)    the length of time that he was questioned;

   (2)    the location of the questioning;

   (3)    the accusatory nature of the questions;

   (4)    the restraint on the defendant's movement during questioning, and;

   (5)    statements by the agents regarding the defendant's freedom to move around or leave (during and after) the interview.

## III.    THE GOVERNMENT'S RESPONSE

The government's response addresses each of the defendant's five factors as follows:

(1)    the government rejects the defendant's argument(s) concerning the length of the interrogation.  The government describes the interview period as "noncustodial and that a "short delay or interruption in a person's travel does not constitute a *per se* custodial interrogation;

(2)    Concerning the location, the government asserts that the defendant chose the location.  Moreover, it was an "open space viewable to the public." Hence, the agents did not block the defendant's ingress and egress, and the exit door was not locked;

(3)    "At no point did the agents ever directly accuse the defendant of having committed a crime."  As well, the defendant appeared comfortable sufficiently so that he interrupted and/or correct SA Luo at times;

2 / 6

(4)    The defendant was not physically restrained.  And, the characterization that the defendant was held in a private room at night is factually in accurate, and, finally;

(5)    Concerning the defendant's freedom to move, the government states that the defendant was told by SA Fox . . . "[You were] free to – you don't have to talk to us..." "This statement contradicts the defendant's claim that he was detained, did not understand what the agents were saying in light of the length of time he has been in North America.  Hence, the government argues that statements by the defendant during the BIS interview were voluntary.

## IV.    APPLICABLE STANDARD OF REVIEW

The government and the defendant agree that a person in police custody must be given *Miranda* warnings prior to questioning in order for the person's statement to be admissible in a court of law against that person.  *See* [United States Federal Constitution, Amendment V]; *see also Miranda v. Arizona*, 384 U.S. 436 (1966).  Thus, any statement(s) whether exculpatory or inculpatory are inadmissible without a showing that the statement(s) were voluntary and not the product of "custodial interrogation".  *Id.* at 444.

The inquiry in this case is whether the defendant was in "custodial" custody as described in *Miranda* and if so, did the defendant believe that he had a right to terminate the interrogation and leave.  *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011).  Stated differently, short of a formal event, would a reasonable person in the defendant's position have understood the situation to constitute a restraint on freedom of movement to the degree that the law associates with a formal arrest.  *United States v. Bengivenga,* 845 F.2d 593 (5th Cir. 1988), *see also Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

In evaluating the question of what constitutes "custodial" interrogation in this case, the Court considers the *Wright* factors, that are non-exclusive, and will use them to guide the Court's evaluation of the circumstances.  In *United States v. Wright*, 773 F.3d 769 (5th Cir. 2015), the Court addressed the following factors:  (1) the length of the questioning; (2) the location of the

questioning; (3) the accusatory or non-accusatory, nature of the questioning; (4) the level of restraint on the individual's physical movement; and (5) statements by law enforcement regarding the individual's freedom to move or leave. *Id.* at 775.

The Court is of the opinion that the defendant was "in custody" from the moment he was accosted in the parking lot. While the *Wright* factors are important to this discussion and analysis, they represent, to a lesser degree, the totality of the appropriate considerations for this case.

Consider, before the defendant was approached in the parking lot area, the government had already placed, in the hands of a Federal Magistrate Judge in the Southern District of Texas, the papers that were necessary for the issuance of an arrest warrant.

In the Court's view, probable cause for the defendant's arrest was absent even though the Agent represented in his affidavit that probable cause existed. Nothing pointed to a culpable mental state on the part of the defendant. Interestingly, the agents chose not to arrest the defendant immediately but delayed announcing to the defendant that he was under arrest until they determined that the defendant "was not going to cooperate" *i.e.,* confess to smuggling GPUs.

The government admitted that it did not receive any inculpatory statements from the defendant in their reports and had not received any evidence of culpability after the seizure of his electronic devices at the border. Their testimony and the defendant's interviews show that HSI agents were not pleased with the defendant's responses to their questions resulting in the remark that had the defendant cooperated – "told the truth", he would likely not have arrested. It is noteworthy that the defendant offered to assist the government, an offer that was ignored and rejected.

After the interview the agents did not release the defendant but left him to wait while they convened away from him and called Houston.  When they returned, they announced to him that he was "under arrest".

For all practical purposes, the agents had the warrant in their pockets.  Therefore, the Court concludes that the Agents intentionally violated *Miranda* by failing to warn that he was the sole subject of their investigation and that he was under arrest when the approached him.

The government asserts that on at least one or more occasions they informed the defendant that he was not required to answer their questions and that he could leave.  While these statements may have carried cautionary weight were the defendant an American citizen, the Court questions the constitutional value of such a statement given to an alien whose principal language is Mandarin.

The defendant is a Canadian citizen and appears to conduct his business in his native tongue, Mandarin.  Importantly, the government knew that the defendant's command of the English language was limited.  He had been questioned previously at the border in July 2025 without the benefit of an interpreter.  They also knew that he spoke Mandarin and that, the use of some English terms would confuse him, particularly legal jargon. *See also* [Interview of 11/28/25].

The November 28 interview was conducted in an accusatory tone or manner.  The government sought information about others engaged in smuggling CPUs to China.  The defendant could not help them as they rejected his offer.  The agents also sought to link the defendant and his business to several companies and/or individuals in China that the government had accused of smuggling CPUs into China.  That, too, failed.  The government then repeated some of the same questions over again by re-wording them and suggesting or accusing the defendant of being untruthful.

The nature of the questions and the techniques, implicate/eliminate/repeat/intimidate - would have befuddled the average English-speaking American.  Hence, a reasonable alien person, particularly a person who would have had the defendant's prior experience with the government, would not have dismissed himself for the interview because he had already been the subject of the same type of treatment in July 2025, when he entered the United States at the Denver Airport and he could not leave  Hence, the Court concludes that a reasonable Chinese national would not have understood that he had a right to end the interrogation without suffering consequences.

After reviewing the motion, response and evidence provided at the hearing on the motion to suppress, and the arguments of counsel, the Court GRANTS the defendant's motion for the reasons set forth in the defendant's motion and this Memorandum and Order.

Therefore, any statements made by the defendant during the interview on November 28, 2025, be SUPPRESSED and the Court further HOLDS that those statements are inadmissible at trial for any purpose.

It is so ORDERED.

SIGNED on June 9, 2026, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge